# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SERGEI KOVALEV, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| v. | : | |
|  | : | |
| LABORATORY CORPORATION OF | : | |
| AMERICA HOLDINGS *et al.*, | : | No. 22-0552 |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                    FEBRUARY *22*, 2023

There is bad blood between Sergei Kovalev and patient service centers operated by Laboratory Corporation of America Holdings ("Labcorp Holdings"), Laboratory Corporation of America ("Labcorp"), their employees, and their affiliates, where Mr. Kovalev sought to have his blood tested.

Mr. Kovalev commenced suit on his own, without counsel. Various motions filed by the many parties to the case are now before the Court. Labcorp and Labcorp Holdings both filed Motions to Dismiss for Failure to State a Claim. Mr. Kovalev filed two Motions to Strike. Adam Schechter and Labcorp Staffing Solutions, Inc. ("Labcorp Staffing") filed Motions to Dismiss. Labcorp, Labcorp Holdings, Labcorp Staffing, and Mr. Schechter filed a Motion to Dismiss Improper Defendants. Finally, Mr. Kovalev filed a Motion to Amend his Complaint.

The Court will (1) grant Labcorp's Motion to Dismiss, (2) grant Labcorp Staffing's Motion to Dismiss, (3) grant Mr. Schechter's Motion to Dismiss, (4) grant in part and deny in part Labcorp Holdings' Motion to Dismiss, (5) grant defendants' Motion to Dismiss Improper Defendants, (6) deny Mr. Kovalev's Motion to Amend Complaint, and (7) deny Mr. Kovalev's Motions to Strike.

TABLE OF CONTENTS

Background ........................................................................................................................... 3

I.    Parties to the Case ................................................................................................... 3

II.   Facts ......................................................................................................................... 4

III.  Procedural History ................................................................................................... 5

Legal Standard .................................................................................................................... 7

Discussion ........................................................................................................................... 8

I.    Labcorp's and Labcorp Staffing's Motions to Dismiss Under Federal Rule of Civil
      Procedure 12(b)(2) for Lack of Personal Jurisdiction ............................................. 8

II.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a
      Claim ...................................................................................................................... 14

      A.    Mr. Schechter's Motion to Dismiss ............................................................. 15

      B.    Motion to Dismiss of Labcorp Holdings ..................................................... 16

            1.    Count I: Assault and Battery ............................................................. 16

            2.    Count II: Assault ............................................................................... 17

            3.    Count III: Assault .............................................................................. 18

            4.    Count IV: Assault by Harassment or Independent Claim for Harassment ............. 18

            5.    Counts V and VII: Assault by Ethnic Intimidation or Independent Claim for Ethnic
                  Intimidation; Pennsylvania Civil Rights Violations - Violation of 42 Pa. Cons. Stat. §
                  8309  19

            7.    Count VIII: Federal Race Discrimination in Violation of 42 U.S.C. § 2000a(a) *et
                  seq.*  22

            8.    Count IX: Federal Race Discrimination in Violation of 42 U.S.C. § 1981 ........... 24

            9.    Count X: Conspiracy in Violation of 42 U.S.C. § 1985 ......................... 25

            10.   Count XI: Violation of Pennsylvania Unfair Trade Practices and Consumer
                  Protection Law, 73 Pa. Stat. § 201-1, *et seq.* ..................................... 26

            11.   Count XII: Negligence ...................................................................... 27

            12.   Count XIII: Negligence *Per Se* ....................................................... 29

            13.   Count XIV: Gross Negligence ........................................................... 30

            14.   Count XV: Negligent Infliction of Emotional Distress ......................... 30

            15.   Count XVI: Intentional Infliction of Emotional Distress ...................... 32

            16.   Count XVII: Reckless Endangerment .................................................. 33

            17.   Count XVIII: Defamation, Defamation Per Se, and Defamation by Implication... 34

18.     Count XIX: Invasion of Privacy – Intrusion Upon Seclusion ............................... 36

19.     Count XX: Breach of Contract or Breach of Implied Contract ............................ 37

20.     Motion to Strike Prayer for Declaratory and Injunctive Relief ............................ 38

21.     Motion to Strike Claim for Punitive Damages ...................................................... 39

III.    Motion to Dismiss Improper Defendants ........................................................................ 39

A.      Individual Labcorp Center Defendants.................................................................... 40

B.      Jane Doe Defendants .............................................................................................. 41

IV.     Mr. Kovalev's Motion to Amend His Complaint ........................................................... 43

V.      Mr. Kovalev's Motions to Strike Motions to Dismiss Filed by Labcorp and Labcorp
Holdings.................................................................................................................................. 44

Conclusion .................................................................................................................................. 44

## BACKGROUND

### I.     Parties to the Case

Labcorp Holdings and Labcorp are for-profit Delaware corporations with principal offices located in North Carolina. Mr. Kovalev asserts that Labcorp Holdings and Labcorp are owners and operators of the various Labcorp centers that set the scene for Mr. Kovalev's allegations.

Labcorp Staffing is also a Delaware corporation, and it too has principal offices in North Carolina. Mr. Kovalev believes that Labcorp Staffing is responsible for hiring Labcorp's and Labcorp Holdings' employees.

Adam Schechter is Labcorp's Chairman, President, and Chief Executive Officer. Mr. Kovalev alleges that Mr. Schechter creates and controls all of Labcorp's policies, including the hiring and training of Labcorp's employees.

Jane Does I through III are adults employed by Labcorp at the patient center located at 7439 Frankford Avenue. Does 1 through 15 are persons, companies, or corporations who were unknown to Mr. Kovalev at the time he filed his Amended Complaint.

Mr. Kovalev has also named the following individual Labcorp facilities as defendants: Labcorp Center – 7001 Frankford Avenue, Labcorp Center – 7439 Frankford Avenue, and Labcorp Center – 8828 Frankford Avenue.

## II.    Facts

Mr. Kovalev traveled to four Labcorp patient service centers in Philadelphia on November 30, 2021, seeking to have blood drawn for medical testing. At the first location, 5349 Oxford Avenue, an employee, identified by Mr. Kovalev as African American, denied Mr. Kovalev the ability to obtain a copy of his test results directly, so Mr. Kovalev refused to have his blood drawn at that location.

Mr. Kovalev proceeded to the 7001 Frankford Avenue Labcorp patient center, where an employee whom Mr. Kovalev identified as Black allegedly did not follow proper hygiene procedures when handling the syringe for his blood draw. Fearing for his health and safety, Mr. Kovalev decided to leave that Labcorp center as well.

Mr. Kovalev arrived at a third Labcorp location at 7439 Frankford Avenue, self-registered at the location by scanning his driver's license, and sat in the waiting area. Jane Doe I, an African American employee as identified by Mr. Kovalev, called Mr. Kovalev's name, requested his date of birth, and his health insurance card. Instead of stating his birth date aloud, Mr. Kovalev provided his driver's license. After Jane Doe I again requested that Mr. Kovalev state his birthday, Mr. Kovalev refused, invoking his privacy concerns under HIPAA. Jane Doe I then called her supervisor, Jane Doe II, claiming that Mr. Kovalev had refused to give his date of birth. Mr. Kovalev "assumed with some degree of certainty" that Jane Doe II was also African American based on her name, and Jane Doe I "used some sort of coded language" to communicate to her supervisor that Mr. Kovalev was a white customer. Am. Compl. ¶ 88. After consulting with her supervisor, Jane Doe I accepted Mr. Kovalev's driver's license, asking him to remove his face

4

mask to verify his identity. Mr. Kovalev refused to take off his mask given the Covid-19 pandemic, and Jane Doe I began to shout that she would call the police if Mr. Kovalev did not leave the office immediately, at Jane Doe II's urging. Another employee, Jane Doe III, whom Mr. Kovalev described as an "aggressive and agitated African-American female" then "cornered" Mr. Kovalev, displaying such "extreme hostility against a White person" that Mr. Kovalev began to fear for his life, and both Jane Doe I and Jane Doe III continued to threaten to call the police. Am. Compl. ¶ 115–16. As Mr. Kovalev was leaving the premises, he recorded the scene on his cell phone. While he approached the exit, Jane Doe III hit Mr. Kovalev's phone with her open hand, almost knocking it away. Mr. Kovalev believed himself to be targeted at this location because of his race and ethnicity.

Still sanguine about his prospects of finding service at a Labcorp facility, Mr. Kovalev journeyed to a fourth patient service center located at 7439 Frankford Avenue. Mr. Kovalev explained to two Labcorp employees that their methods were unsanitary and grossly negligent. However, the blood draw was ultimately completed at this location.

Mr. Kovalev alleges that his odyssey to the various Labcorp locations resulted in his "injury, loss, mental anguish, embarrassment, humiliation, apprehension, grief, loss of enjoyment of life, harm and damages." Am. Compl. ¶ 221.

### III.    Procedural History

Mr. Kovalev filed his complaint in the Philadelphia Court of Common. He initially named only Labcorp and Labcorp Holdings as defendants. Those defendants filed a Notice of Removal, and a month later, Mr. Kovalev filed an amended complaint, naming the following additional defendants: Labcorp Center – 7001 Frankford Avenue, Labcorp Center - 7439 Frankford Avenue, Labcorp Center – 8828 Frankford Avenue, Adam H. Schechter, Jane Doe I, Jane Doe II, Jane Doe III, Labcorp Staffing Solutions, Inc., and Does 1 through 15.

The Amended Complaint sets forth 20 claims: (1) assault and battery – civil claims for intimidation, threats and physical attack (Count I); (2) assault – civil claims for intentional denial of medically necessary services (Count II); (3) assault – civil claims for subjecting plaintiff to extreme fear for life and health as a result of Labcorp's violations of sanitary and safety protocols (Count III); (4) assault by harassment or independent claim for harassment (Count IV); (5) assault by ethnic intimidation or independent claim for ethnic intimidation (Count V); (6) civil conspiracy – conspiracy to deny services, injure and defraud (Count VI); (7) Pennsylvania civil rights violations – violation of 42 Pa. Cons. Stat. § 8309 (Count VII); (8) federal race discrimination in violation of 42 U.S.C. §2000a(a) *et seq.* (Count VIII); (9) federal race discrimination in violation of 42 U.S.C. § 1981 (Count IX); (10) conspiracy in violation of 42 U.S.C. § 1985 (Count X); (11) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Cons. Stat. § 201-1, *et seq.* (Count XI); (12) negligence (ordinary negligence) (Count XII); (13) negligence per se (Count XIII); (14) gross negligence (Count XIV); (15) negligent infliction of emotional distress (Count XV); (16) intentional infliction of emotional distress (Count XVI); (17) reckless endangerment (Count XVII); (18) defamation, defamation per se, and defamation by implication (Count XVIII); (19) invasion of privacy – intrusion upon seclusion (Count XIX); and (20) breach of contract and/or breach of implied contract (Count XX). Mr. Kovalev also seeks punitive damages and declaratory and injunctive relief.

Labcorp Holdings filed its Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Labcorp also filed a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). Labcorp seeks dismissal for lack of personal jurisdiction under

Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, dismissal of all counts per Rule Federal Rule of Civil Procedure 12(b)(6).

Mr. Kovalev filed what appear to be identical Motions to Strike Labcorp Holdings' and Labcorp's Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(f).

Mr. Schechter also filed a Motion to Dismiss Mr. Kovalev's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. Schechter seeks dismissal of all counts in the Amended Complaint and also avers that Mr. Kovalev cannot pursue a claim against a corporate officer for alleged acts of a corporation.

Labcorp Staffing filed its own Motion to Dismiss under Rules 12(b)(2) and 12(b)(6). Labcorp Staffing argues that it must be dismissed for lack of personal jurisdiction, or in the alternative, all the claims should be dismissed for failure to state a claim.

Labcorp, Labcorp Holdings, Labcorp Staffing, and Mr. Schechter also filed a Motion to Dismiss Improper Defendants—that is, the "Labcorp Center" and Jane Doe defendants—pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5).

Finally, Mr. Kovalev seeks to amend his Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) because he wishes to use the real names of Jane Does I through III.

All parties have had opportunity to respond to these pending motions, the motions are fully briefed and, hence, ripe for decision.

## LEGAL STANDARD

*Pro se* pleadings such as Mr. Kovalev's are to be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint is held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A claim raised by a *pro se* plaintiff should be dismissed only when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521.

7

Still, the Third Circuit Court of Appeals has held that *pro se* litigants must "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). A court should read the self-representing "party's papers liberally and interpret[] them to raise the strongest arguments suggested therein." *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384 (W.D. Pa. 2007).

DISCUSSION

The various defendants make arguments that are, if not identical, substantially similar. Thus, the Court will analyze many of the arguments together, beginning with the issue of personal jurisdiction.

**I.     Labcorp's and Labcorp Staffing's Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction**

A defendant may assert lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "To show personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence." *Kovalev v. Lidl US, LLC*, No. 21-cv-3300, 2022 WL 17858055, at *5 (E.D. Pa. Dec. 21, 2022) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (internal citation omitted). Where a court does not hold an evidentiary hearing on a Rule 12(b)(2) motion, "the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). "[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must

accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d. Cir. 1992).

Federal district courts typically exercise personal jurisdiction according to the law of the state where the court sits. *O'Connor*, 496 F.3d at 316. Because this Court sits in Pennsylvania, it will apply Pennsylvania's long-arm statute, which provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States . . . based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); *see O'Connor*, 496 F.3d at 316. Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor*, 496 F.3d at 317. General personal jurisdiction requires that the defendant have "continuous and systematic" contacts with the forum state. *Id.* Specific jurisdiction involves a three-part test. *Id.* "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citing *Burger King*, 471 U.S. at 476) (internal quotations omitted).

Labcorp and Labcorp Staffing argue that the Court lacks general and specific jurisdiction over those entities.[1] Labcorp and Labcorp Staffing assert that they are both Delaware corporations, with principal places of business in Burlington, North Carolina, that they have not consented to the jurisdiction of this Court, that they do not operate or otherwise have any involvement in the patient service centers located at 5349 Oxford Avenue, 7001 Frankford Avenue, 7439 Frankford Avenue, or 8828 Frankford Avenue in Philadelphia, and that they have no employees or agents at those locations.

Mr. Kovalev responds that

[I]t was the Defendant Laboratory Corporation of America, who came to the City of Philadelphia to transact locally its business, to enrich itself from dealings with Philadelphia residents and to injure this Plaintiff; and in such manner, Defendant Laboratory Corporation of America subjected itself to personal and general jurisdiction of the Pennsylvania courts; therefore, rendering the exercise of jurisdiction of any state and federal court in Philadelphia proper and necessary.

Pl.'s Resp. at 10, Doc. No. 30. Using nearly identical language, he responds to Labcorp Staffing's Motion to Dismiss. Pl.'s Resp. at 12–13, Doc. No. 52.

Mr. Kovalev does not sufficiently allege that Labcorp or Labcorp Staffing has such "continuous and systematic" contacts with Pennsylvania that it is "at home" in the state. *See O'Connor*, 496 F.3d at 317. Neither Labcorp nor Labcorp Staffing is domiciled in Pennsylvania. Mr. Kovalev concedes this in his Amended Complaint, identifying both entities as incorporated in Delaware with principal places of business in North Carolina. Labcorp and Labcorp Staffing's registrations in Pennsylvania as foreign corporations are not sufficient to establish general personal

---

[1]    Labcorp Holdings does not raise a Rule 12(b)(2) jurisdictional challenge.

jurisdiction. *Mallory v. Norfolk S. Ry. Co.*, 266 A.3d 542, 566 (Pa. 2021), *cert. granted*, 142 S. Ct. 2646 (2022).[2]

Mr. Kovalev maintains that specific personal jurisdiction exists. Construing his response liberally, he appears to argue that the first prong of the specific personal jurisdiction test has been met because Labcorp "purposefully directed [its] activities' at the forum," *O'Connor*, 496 F.3d at 317, by registering as a foreign corporation in Pennsylvania and maintaining, or providing staffing services to, customer care centers within Philadelphia. Mr. Kovalev is tripped up by the second prong, however, because he does not meet his burden to show that the litigation arises out of or relates to such contacts. *O'Connor*, 496 F.3d at 317. Instead, he merely asserts that because Labcorp has registered to use "the name Labcorp" in Pennsylvania and "[e]ach Labcorp center that Plaintiff visited is listed as Labcorp connected to Laboratory Corporation of America," Labcorp is relevant to this action, disregarding Labcorp's affidavit to the contrary, which states that Labcorp "does not operate, control, manage, or otherwise have any involvement in the patient service centers" where Mr. Kovalev sought service, nor does it have employees or agents at such locations. Pl.'s Resp. to Labcorp's Mot. to Dismiss at 12–13, Doc. No. 30; Kilbourne Decl. ¶¶ 5–6, Doc. No. 21-4. Similarly, relying on a definition of "staffing" procured from an online dictionary, Mr. Kovalev alleges that Labcorp Staffing is the employment branch of Labcorp that has the responsibility for obtaining personnel to fill all positions at Labcorp, at all levels and locations. This is not sufficient proof to overcome Labcorp Staffing's jurisdictional challenge.

---

[2]      The Pennsylvania Supreme Court has explained that the "statutory scheme of conditioning the privilege of doing business in the Commonwealth on the submission of the foreign corporation to general jurisdiction in Pennsylvania courts strips foreign corporations of the due process safeguards guaranteed in *Goodyear* and *Daimler*. Legislatively coerced consent to general jurisdiction is not voluntary consent and cannot be constitutionally sanctioned." *Mallory*, 266 A.3d. at 571. The United States Supreme Court, which granted certiorari, has not yet decided the issue raised in *Mallory*.

Mr. Kovalev may possibly be arguing that specific personal jurisdiction exists under an "alter ego" theory. Under that theory of personal jurisdiction, "a plaintiff must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Simeone v. Bombardier-Rotax GMBH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005). However, though such a theory may be feasible, he faces a difficult task to establish specific personal jurisdiction in this manner because "[c]ourts have noted a 'strong presumption' against piercing a corporate veil or deeming companies alter-egos of each other." *Reynolds v. Turning Point Holding Co.*, No. 19-cv-1935, 2020 WL 953279, at *3 (E.D. Pa. Feb. 26, 2020).

Mr. Kovalev hints[3] at this theory by stating:

> Laboratory Corporation of America is not some stranger to Labcorp, it is in reality an owner and operator of all Labcorp centers in question, together with Laboratory Corporation of America Holdings. All these numerous companies are the same Labcorp business conglomerate.

Pl.'s Resp. to Labcorp's Mot. to Dismiss at 13, Doc. No. 30. As to Labcorp Staffing, Mr. Kovalev alleges that it shares the fictitious Pennsylvania name "Labcorp" with the other corporate defendants and "it can be presumed that [Labcorp Staffing] is responsible for the employees' hiring process and/or for hiring policies." Pl.'s Resp. to Labcorp Staffing's Mot. to Dismiss at 13, 15, Doc. No. 52. But Mr. Kovalev does not elaborate on these assertions sufficiently to prevail in the face of Labcorp or Labcorp Staffing's motions to dismiss.

In this district, courts weigh the following factors to decide whether an entity is the alter ego of another entity:

> (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo;

---

[3]   It is not clear whether that hint is inadvertent or intended.

(5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation.

*Simeone*, 360 F. Supp. 2d at 675. These factors are non-exclusive but are intended to resolve the issue of whether companies effectively have the same identity. *Id.* at 676.

Mr. Kovalev alleges almost no facts relating to any of these ten factors. He sets forth no allegations as to whether Labcorp, Labcorp Holdings, or Labcorp Staffing own stock in each other, whether they share common officers and directors, use an integrated sales system, interchange supervisory personnel, perform business functions through a subsidiary rather than through the parent's internal departments or agents, perform marketing functions on each other's behalf, or receive instructions as to corporate officers from each other. Indeed, Mr. Kovalev does not even seem to articulate whether Labcorp is a parent of Labcorp Holdings, or vice versa. Rather, Mr. Kovalev bases his entire theory of jurisdiction on the indisputable fact that Labcorp, Labcorp Holdings, and Labcorp Staffing have similar names, and a portion of that similar name appears on the patient service centers where he sought to have his blood drawn. This could be relevant to the factors of a common marketing image and the common use of a trademark or logo, and Mr. Kovalev assumes it means that the defendant corporations have common use of the same employees. But the "similarity of names between the parent and subsidiary corporation . . . will [not] per se justify a court in piercing the corporate veil if each corporation maintains a bona fide separate and distinct corporate existence." *Botwinick v. Credit Exch., Inc.*, 213 A.2d 349, 354 (Pa. 1965).

This fact of the defendants' similar names is insufficient to impute enough jurisdictional contacts between Pennsylvania and Labcorp or Labcorp Staffing to justify a finding of specific personal jurisdiction. Mr. Kovalev may conflate Labcorp, Labcorp Holdings, and Labcorp Staffing throughout the Amended Complaint, but he has failed to show how one entity's ownership, operation, or control of the other makes them effectively the same corporate entity for jurisdictional purposes. His contention that these entities must operate and own, or provide staffing services to, the loci of his complaint *together* is merely conclusory.

Because Mr. Kovalev does not adequately establish, in his Amended Complaint or in the effort to respond to Labcorp's and Labcorp Staffing's affidavits, that either general or specific jurisdiction over Labcorp or Labcorp Staffing exists under these circumstances, including under an alter ego theory, the Court concludes that it has no personal jurisdiction over Labcorp or Labcorp Staffing for this case. Therefore, Labcorp and Labcorp Staffing are dismissed from this action.

## II.      Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully. *Id.* Instead, "[a] claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Courts should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 at 679 (alternation in the original) (internal quotation marks omitted).

### A. Mr. Schechter's Motion to Dismiss

Mr. Schechter argues primarily that Mr. Kovalev similarly cannot maintain claims against him solely on the basis that he is an officer of a corporation against which Mr. Kovalev has also raised claims.

"Under Pennsylvania law, corporate officers cannot be held liable for the alleged torts committed by the corporation simply by virtue of their offices." *McCracken v. Daimler Chrysler Motors Co.*, No. 07-cv-2202, 2008 WL 920344, at *2 (E.D. Pa. 2008). Generally, corporate officers may be held liable only under the participation theory. *Id.* "Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts." *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). Therefore, when a plaintiff seeks to hold a corporate officer liable for the alleged acts of a corporation, he must allege in the complaint that the corporate officer was an active and knowing participant in the alleged activity. *McCracken*, 2008 WL 920344, at *3. The plaintiff's failure to allege active participation by the corporate officer, beyond general supervision of the corporation, results in dismissal of the complaint. *Id.*

Mr. Kovalev includes 20 counts against Mr. Schechter in his Amended Complaint, and the basis for including Mr. Schechter as a defendant in each count is that Mr. Schechter,

as Labcorp's Chairman, President and Chief Executive Officer is a creator of all Labcorp's policies, he is in control of all Labcorp's existing policies, and he acted within the scope of his official employment duties and responsibilities when he *failed* to act properly according to circumstances and requirements, *allowed and condoned* illegal, negligent, tortious, life endangering, and inappropriate activities described in this Complaint.

Am. Compl. ¶¶ 157, 219, 231, 240, 261, 271, 290, 301, 330, 371, 381, 413, 437, 457, 473, 527, 551, 567, 585 (emphasis added). But even reading the Amended Complaint generously, it simply does not allege that Mr. Schechter *actively* participated in the alleged misconduct that took place in various Labcorp patient service centers in the Philadelphia area, even if it does assert that Mr. Schechter engaged in nonfeasance from afar.

Therefore, the Court dismisses all claims against Mr. Schechter.[4]

**B.  Motion to Dismiss of Labcorp Holdings**

Labcorp Holdings moves to dismiss each of the 20 counts alleged by Mr. Kovalev for failure to state a claim. It also moves to strike Mr. Kovalev's prayer for declaratory and injunctive relief and his claim for punitive damages. The Court will generally address each claim seriatim.

**1.  Count I: Assault and Battery**

At Count I, Mr. Kovalev asserts a claim for assault and battery against all defendants based on his allegation that Jane Does I, II, and III at the Labcorp center located at 7439 Frankford Avenue threatened, chased, and removed Mr. Kovalev from the facility. Labcorp Holdings argues that this claim should be dismissed because Mr. Kovalev has not adequately pleaded the "intent" element of his assault or battery claims.

---

[4]   Mr. Kovalev only nods to the possibility of piercing the corporate veil in passing, and even reading his pleadings and briefings generously, the Court cautions against proceeding with analysis on that issue here.

Per Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950). The actor is only liable for assault if he acts with intent to cause a harmful or offensive contact or an imminent apprehension of harmful or offensive contact, and the other person actually experiences imminent apprehension. Restatement (Second) of Torts § 21. "Battery occurs when a person acts intending to cause a harmful or offensive contact with the person of the other or a third person or an imminent apprehension of such a contact, and . . . a harmful contact with the person of the other directly or indirectly results." *Sciotto v. Marple Newton Sch. Dist.*, 81 F.Supp. 2d 559, 577 (E.D. Pa. 1999) (quoting Restatement (Second) of Torts § 13) (internal quotation marks omitted).

Construing the Amended Complaint liberally, as required, the Court sees that Mr. Kovalev has alleged enough facts to support an intentional attempt by Jane Does I, II, or III to cause Mr. Kovalev physical injury or fear of physical injury or harmful contact. He alleges that the Labcorp Holdings employees were "extremely aggressive," "threatening," and "showing all signs of immediate readiness to attack physically" while they followed him through the facility. Am. Compl. ¶ 211–12. Mr. Kovalev also asserts sufficient facts to suggest that Jane Doe III hit his phone with the specific intent of causing harmful or offensive contact to his person.

The motion to dismiss Count I is therefore denied.

### 2. Count II: Assault

At Count II, Mr. Kovalev asserts another claim for assault, alleging that Mr. Kovalev experienced apprehension of bodily harm and personal injuries when Jane Does I, II, and III intentionally denied him medically necessary services.

As stated above, an actor is only liable for assault if he acts with intent to cause a harmful or offensive *contact* or an imminent apprehension of harmful or offensive *contact*, and the other person actually experiences imminent apprehension. Restatement (Second) of Torts § 21. Denial of medical services cannot qualify as an assault because it does not involve any contact at all— indeed, the very lack of physical contact is what Mr. Kovalev alleges will eventually, rather than imminently, result in harm to him.

As Mr. Kovalev has failed to plead an essential element of this tort, the motion to dismiss Count II is granted.

### 3.   Count III: Assault

Mr. Kovalev next claims that he was placed in considerable fear of bodily harm and personal injury when the Labcorp center's employees intentionally tried to infect him with Covid-19 by demanding he remove his protective mask.

This claim, too, fails because Mr. Kovalev does not plead a harmful or offensive contact that would establish a plausible claim of assault. Even assuming that an intentional exposure to air in a public space could be considered harmful or offensive contact, Mr. Kovalev only asserts in his amended complaint that an employee demanded he remove his mask, a demand with which Mr. Kovalev did not comply. There is no allegation in the Amended Complaint that an employee acted with the specific intent of physically removing his mask to expose Mr. Kovalev to the harmful contact of a virus.

Count III will therefore also be dismissed.

### 4.   Count IV: Assault by Harassment or Independent Claim for Harassment

Mr. Kovalev also attempts to bring an independent claim for harassment pursuant to the Pennsylvania criminal harassment statute, 18 Pa. Cons. Stat. § 2709, or assault by harassment.

As Labcorp Holdings notes, § 2709 sets forth the elements of the crime of harassment without establishing a *civil* cause of action. *In re Olick*, No. 10-cv-7492, 2011 WL 5075104, at *9 (E.D. Pa. Oct. 26, 2011); *see also DeAngelo v. Fortney*, 515 A.2d 594, 596 (Pa. Super. Ct. 1986) (declining to create a separate tort of harassment premised on § 2709).[5]

Therefore, Count IV fails immediately and the claim of harassment is dismissed.

### 5. Counts V and VII: Assault by Ethnic Intimidation or Independent Claim for Ethnic Intimidation; Pennsylvania Civil Rights Violations - Violation of 42 Pa. Cons. Stat. § 8309

At Count V, Mr. Kovalev pursues a claim of ethnic intimidation, alleging that Labcorp employees acted with malicious intent toward him on the basis of his race, color, or national origin, as a civil claim related to 18 Pa. Cons. Stat. § 2710. Under this law,

> [a] person commits the offense of ethnic intimidation if, with malicious intention toward the race, color, religion or national origin of another individual or group of individuals, *he commits an offense under any other provision of this article or under Chapter 33* (relating to arson, criminal mischief and other property destruction) exclusive of section 3307 (relating to institutional vandalism) *or under section 3503* (relating to criminal trespass) with respect to such individual or his or her property or with respect to one or more members of such group or to their property.

18 Pa. Cons. Stat. § 2710(a) (emphasis added). "Malicious intention" is defined to mean the intent to commit any act that "is a necessary element of [the predicate crime] motivated by hatred toward the race, color, religion or national origin of another individual or group of individuals." *Id.* § 2710(c).

Mr. Kovalev's claim at Count V fails for two reasons. First, there is no private cause of action under § 2710 itself. *Isaac v. Marsh*, No. 1:20-cv-1993, 2020 WL 6504637, at *5 (M.D. Pa.

---

[5]      Labcorp argues that, even if 18 Pa. Cons. Stat. § 2709 provided a civil cause of action, Mr. Kovalev's claim would still fail as he does not allege that any defendant acted with the requisite intent to "harass, annoy, or alarm" him.

Nov. 5, 2020). Second, Mr. Kovalev has not asserted facts that would support a finding that he was acted against with malicious intent. "The statute requires showing that, in the course of committing the predicate offense, the actor manifested a malicious intent toward the intended victim and had as motivation the hatred of the victim's race, color, religion, or national origin." *Id.* (citing *Commonwealth v. Sinnott*, 30 A.3d 1105, 1109 (Pa. 2011)). Mr. Kovalev frequently alleges, almost always in the vaguest terms, that he was discriminated against due to his "White minority status." Am. Compl. ¶ 142. Specifically, Mr. Kovalev alleges that Jane Doe I "used some sort of coded language that presumably was used to apprise Jane Doe II (supervisor) that [Mr. Kovalev] was a White customer." Am. Compl. ¶ 88. But this allegation is not supported by sufficient facts, and Mr. Kovalev does not suggest that either Jane Doe I or Jane Doe II used the type of charged racial language to describe Mr. Kovalev that would lead to a plausible inference of malicious intention. Rather, he merely notes that his ethnicity contrasts with the Jane Doe defendants' ethnicity and attributes racial motives to their alleged actions.

Hence, Count V is dismissed pursuant to Rule 12(b)(6).

Mr. Kovalev also asserts a claim under 42 Pa. Cons. Stat. § 8309, which does provide a private cause of action under § 2710. Labcorp Holdings argues that Mr. Kovalev's claim under this count must be dismissed because Mr. Kovalev has failed to plead an existing violation of § 2710.

Section 8309 states as follows:

> A person who incurs injury to his person or damage or loss to his property as a result of conduct described in 18 Pa. C.S. § 2710 (relating to ethnic intimidation) . . . shall have a right of action against the actor for injunction, damages or other appropriate civil or equitable relief.

42 Pa. Cons. Stat. § 8309; *Brown-Dickerson v. City of Phila.*, No. 15-cv-4940, 2020 WL 6504637, at *5. As discussed above, the offense of ethnic intimidation requires the commission of an

20

enumerated predicate offense in § 2710 "with malicious intention toward the race, color, religion or national origin of another individual or group of individuals." 42 Pa. Cons. Stat. § 2710(a).

Because § 8309 is predicated on a plaintiff pleading that conduct described in § 2710 has occurred, and Mr. Kovalev has failed to show that the defendants acted with the requisite malicious intent, his § 8309 claim must fail as well.

The Court thus dismisses Count VII of the Amended Complaint.

### 6. Count VI: Civil Conspiracy

Mr. Kovalev also asserts a civil conspiracy claim in which he alleges that the defendants' representatives and employees, including three persons who are presumably Jane Does I through III, conspired against the rights of Mr. Kovalev with the intent to deny him medically necessary services, thereby injuring and defrauding him.

Under Pennsylvania law, "[i]n order to state a civil action for conspiracy, a complaint must allege: 1) a combination of *two or more persons* acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage." *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (emphasis added). If there is no civil cause of action relating to a particular act, there is no cause of action for a conspiracy to commit that same act. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

However, because a corporation can act only through its officers and employees, a corporation is incapable of conspiring with itself. *Jagielski v. Package Mach. Co.*, 489 F. Supp. 232, 233 (E.D. Pa. 1980). "Thus, the intra-corporate conspiracy doctrine treats allegations that a corporation and its employee conspired as really alleging that a 'single, corporate entity' has conspired with itself." *Houser v. Feldman*, 600 F. Supp. 3d 550, 570 (E.D. Pa. 2022). Of course, there is an exception if the employee has acted on his own behalf and for his own personal benefit,

*id.*, but Mr. Kovalev fails to allege that Jane Doe defendants were acting in anything but their capacity as employees.

Accordingly, the Court dismisses Count VI of Mr. Kovalev's Amended Complaint.

### 7. Count VIII: Federal Race Discrimination in Violation of 42 U.S.C. § 2000a(a) *et seq.*

At Count VIII, Mr. Kovalev asserts a violation of 42 U.S.C. § 2000a(a) *et seq.* Specifically, he alleges that he was denied full and equal enjoyment of the services and facilities of the defendants due to his race, ethnicity, and gender, because he was the only white customer at the time of the alleged incidents.

"In order to state a claim under 42 U.S.C. § 2000a, the plaintiff must establish that she was deprived of the full and equal enjoyment of a public accommodation on the grounds of race, color, religion, or national origin." *McCrea v. Saks, Inc.*, No. 00-cv-1936, 2000 WL 1912726, at *2 (E.D. Pa. Dec. 22, 2000); 42 U.S.C. § 2000a(a). There are other preliminary requirements as well. Section 2000a-3(c) provides:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person, provided that the court may stay proceedings in such civil action pending the termination of State or local enforcement proceedings.

42 U.S.C. § 2000a-3(c). Pennsylvania has such a law, the Pennsylvania Human Rights Act, and the appropriate state authority is the Pennsylvania Human Rights Commission. It does not appear that Mr. Kovalev afforded PHRC an opportunity to remedy his alleged problem, so he has failed

to exhaust his administrative remedies before filing his complaint in this Court. *James v. Wal-Mart*, No. 08-cv-1821, 2009 WL 10719093, at *5 (M.D. Pa. June 1, 2009).

Even if Mr. Kovalev had exhausted his administrative remedies, he has failed to state a claim. That is because he has not established that the alleged acts of discrimination occurred in a place of public accommodation. The Third Circuit Court of Appeals has confirmed that to qualify as a place of public accommodation, two elements must be fulfilled: "first, it must be one of the statutorily enumerated categories of establishments that serve the public; second, its operations must affect commerce." *U.S. v. Lansdowne Swim Club*, 894 F.2d 83, 86 (3d Cir. 1990) (citing 42 U.S.C. § 2000a(b)) (internal citations omitted). Because Labcorp patient service centers do not fall within any of the enumerated categories set forth in 42 U.S.C. § 2000a(b),[6] Mr. Kovalev cannot assert a claim under this statute.

The Court therefore dismisses Count VIII of his Amended Complaint.

---

[6] The statute lists the following establishments as places of public accommodation:

    (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

    (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;

    (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

    (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

**8.   Count IX: Federal Race Discrimination in Violation of 42 U.S.C. § 1981**

Mr. Kovalev also alleges a violation of 42 U.S.C. § 1981, arguing that he was physically deterred from making a contract for services at a Labcorp patient services center on account of his status as a member of a racial minority.

Section 1981 states that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). The statute is meant to protect against purposeful discrimination. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

"To establish a claim[ ] under 42 U.S.C. § 1981, plaintiff must allege facts in support of the following elements: 1) plaintiff is a member of a racial minority; 2) intent to discriminate on the basis of race by the defendant; and 3) discrimination concerned one or more of the activities enumerated in the statute . . . ." *Yelverton v. Lehman*, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1996), *aff'd. mem.*, 175 F.3d 1012 (3d Cir. 1999).[7] "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "Section 1981 offers relief when racial discrimination blocks

---

[7]     Although the Third Circuit Court of Appeals has listed membership in a racial minority group as an element of a § 1981 claim, the case in which it made such a conclusion involved non-white plaintiffs. *See Clemente v. Allstate Ins. Co.*, No. 22-cv-56, 2022 WL 17976324, at *7 (W.D. Pa. Dec. 28, 2022) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). The Supreme Court, upon examining the language and history of the statute, has held that plaintiffs are not barred from bringing § 1981 claims merely because they are white. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286–87 (1976). In any event, Labcorp Holdings does not argue that Mr. Kovalev's race precludes him from establishing this claim.

the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Here, Mr. Kovalev's factual allegations do not support a finding of intent to discriminate on the basis of race by any of the defendants. While Mr. Kovalev repeatedly asserts his Eastern European origins and remarks frequently that Labcorp employees were African American, he fails to plausibly allege that anything other than his refusal to confirm his identity prompted employees of the facility to ask that he leave. Mr. Kovalev's assumption that Jane Doe I and Jane Doe II "used some sort of coded language that *presumably* was used to apprise Jane Doe II" of Mr. Kovalev's race is unsupported by further factual allegations and insufficient to establish racial animus. Am. Compl. ¶ 88 (emphasis added); *see Joseph v. Planet Fitness Asset Co. LLC*, No. 21-cv-25, 2021 WL 5772562, at *3 (W.D. Pa. Nov. 4, 2021) (finding no racial animus alleged where "no other persons . . . made any reference to, or suggestion of, Plaintiff's race other than Plaintiff himself").

Count IX is thus dismissed.

### 9. Count X: Conspiracy in Violation of 42 U.S.C. § 1985

Mr. Kovalev makes a claim under 42 U.S.C. § 1985. The statute sets forth that

> [i]f two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action of the recovery of damages occasioned by such injury or deprivation.

42 U.S.C. § 1985(3). To succeed on this claim, a plaintiff must allege the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). The plaintiff must allege "invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971).

Mr. Kovalev fails on this claim too.[8] As discussed above relating to Mr. Kovalev's § 1981 claim, he fails to allege facts that would support a finding that the defendants were motivated by "invidiously discriminatory animus." *Id.* Mr. Kovalev's conclusory allegation that the defendants acted "with malice, oppression, and in reckless disregard for [his] rights as a human being" is entirely unsupported by facts in the Amended Complaint. Am. Compl. ¶ 383.

The Court denies Count X for failure to state a claim upon which relief can be granted.

### 10. Count XI: Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, *et seq.*

Next, Mr. Kovalev alleges a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1, arguing that he relied on Labcorp's national advertising as to its safe and satisfactory professional services.

Mr. Kovalev has tried to invoke Pennsylvania's consumer protection law, which is meant to prohibit "[u]nfair methods of competition" and "unfair or deceptive acts or practices." *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC,* 40 A.3d 145, 151 (Pa. Super. Ct. 2012). To prevail on such a claim in a private cause of action, "a plaintiff must show that he: 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or

---

[8]     Labcorp Holdings argues that the intracorporate conspiracy doctrine bars Mr. Kovalev's claim here. However, as the Supreme Court "has not given its approval to this doctrine in the specific context of § 1985(3)," this Court will not rely on that theory to dismiss this claim. *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1868 (2017).

employment by a person of a method, act, or practice declared unlawful by the UTPCPL." *Mazur v. Milo's Kitchen, LLC*, No. 12-cv-1011, 2013 WL 3245203, at *7 (W.D. Pa. June 25, 2013). If a plaintiff "satisf[ies] the elements of common-law fraud or . . . otherwise alleg[es] deceptive conduct," his claim may survive a  motion to dismiss. *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 420 (E.D. Pa. 2016).

Mr. Kovalev fails to show that elements two and three are plausibly met here. First, he has not alleged any "ascertainable loss of money or property" as required to state a private cause of action. Instead, he vaguely states that he "suffered from damages and losses, injuries, harm to his health, pain and suffering, including physical, mental and emotional harm, psychological trauma, grief, loss of enjoyment of life, and actual losses." Am. Compl. ¶ 422.

Mr. Kovalev has also failed to allege any deceptive acts or practices. *See* 73 Pa. Cons. Stat. § 201-2(4)(vii) (defining "unfair or deceptive acts or practices" to include "[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are of another"). The only representation Mr. Kovalev alleges with any degree of particularity is that Labcorp advertises that it has a staff "committed to providing a professional environment during the specimen collection process." Am. Compl. ¶ 2, 43. He does not allege facts regarding where any defendant makes this representation, nor does he allege facts as to when or how he learned of the representation.

Because elements of this claim have not been met, Count XI is dismissed.

### 11. Count XII: Negligence

Mr. Kovalev asserts a claim for negligence on the basis that the defendants did not comply with all laws and regulations in exercising reasonable care in managing Labcorp's patient service centers, including by exercising reasonable care in hiring and supervising employees.

"A claim for negligence under Pennsylvania law contains four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *Nw. Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 139 (3d Cir. 2005). An employer has a "duty to exercise reasonable care in selecting, supervising and controlling employees." *R.A. ex rel. N.A. v. First Church of Christ,* 748 A.2d 692, 697 (Pa. Super. Ct. 2000). However, under this theory, "it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee." *Dempsey v. Walso Bureau, Inc.,* 246 A.2d 418, 570.

Even accepting, for the purposes of its motion to dismiss, that Mr. Kovalev could establish the elements of duty and breach, Labcorp Holdings argues that Mr. Kovalev's negligence claim must fail because he alleges no physical harm or damage to his person or his property as a result of any alleged breach of duty here. Mr. Kovalev seeks "compensation for his pain and suffering, inconvenience, [and] mental anguish," Am. Compl. ¶ 439, but he asserts no factual basis for his alleged loss. The only actual "loss" that Mr. Kovalev could conceivably assert is that Jane Doe III made physical contact with his phone. But even there, finding harm or damage is too far a stretch. He did not specify any compensatory damage associated with that contact, instead only asserting that his phone was "believed [to be] dysfunctional, because when he was trying to examine his telephone later, he was not able to achieve the functions as he had before Jane Doe III hit his telephone." Am. Compl. ¶ 141.

This wholly speculative allegation is not nearly enough to establish an actual loss or damage, so Mr. Kovalev's Count XII fails for failure to state a claim.

28

**12. Count XIII: Negligence *Per Se***

At Count XIII, Mr. Kovalev asserts a claim for negligence *per se* on the basis that the defendants violated "42 Pa. C.S. § 8309, 18 Pa. C.S. § 2710, 43 Pa. C.S. § 951, *et seq.*; the Philadelphia Fair Practices Ordinance, Section 9-1101 *et seq.*; 18 Pa. C.S. § 2705; 73 P.S. § 201-1, et seq; 42 U.S.C. § 2000a(a) *et seq.*; 42 U.S.C. § 1981; [and] 42 U.S.C. § 1985." Am. Compl. ¶ 451.

In Pennsylvania, negligence *per se* is a theory that "establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm." *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. Ct. 2014). To state a negligence per se claim:

> (1) [t]he purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) [t]he statute or regulation must clearly apply to the conduct of the defendant; (3) [t]he defendant must violate the statute or regulation; [and] (4) [t]he violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Id.* Because negligence *per se* is not an independent tort, "Pennsylvania law does not permit Plaintiffs to plead it as a separate claim from general negligence."[9] *Sipp-Lipscomb v. Einstein Physicians Pennypack Pediatrics,* No. 20-cv-1926, 2020 WL 7353105, at *1 (E.D. Pa. Dec. 9, 2020).

Here, Mr. Kovalev has failed to show that Labcorp Holdings violated any of the statutes described above. Per the previous analyses, the Court has found that Mr. Kovalev failed to state a claim under 18 Pa. Cons. Stat. § 2710, 42 Pa. Cons. Stat. § 8309, 42 U.S.C. § 2000a(a) *et seq.*, 42

---

[9]    Typically, where a claim of negligence is allowed to stand, "the court must dismiss the standalone negligence *per se* claim to permit plaintiffs to plead it as a theory for liability under general negligence." *Sipps-Lipscomb*, 2020 WL 7353105, at *3. Because Mr. Kovalev's claim for general negligence has already been dismissed, a more substantive analysis is warranted here.

U.S.C. § 1981, 42 U.S.C. § 1985, or 73 Pa. Stat. § 201-1, *et seq*. Moreover, Mr. Kovalev alleges no facts at all in the Amended Complaint pertaining to violations of 43 Pa. Con. Stat. § 951 or the Philadelphia Fair Practices Ordinance. This failure to show any violation of statute or regulation condemns Mr. Kovalev's Count XIII.

Moreover, even if Mr. Kovalev succeeded in asserting a negligence *per se* theory, because the theory establishes only the first two elements of negligence (duty and breach), he would still have the burden of establishing the second two elements of negligence (causation and actual loss or damages). As discussed above, Mr. Kovalev has failed to assert actual loss or damages that would support a negligence claim under Pennsylvania law.

Mr. Kovalev's Count XIII also must be dismissed.

### 13. Count XIV: Gross Negligence

Next, Mr. Kovalev asserts a claim for gross negligence. However, as Labcorp Holdings notes, "there is no separate cause of action under Pennsylvania law for gross negligence." *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 215 n.2 (3d Cir. 2010).

Count XIV is therefore dismissed.

### 14. Count XV: Negligent Infliction of Emotional Distress

At Count XV, Mr. Kovalev alleges a claim of negligent inflection of emotional distress, arguing that he "has suffered and continues to suffer injuries, mental anguish, humiliation, apprehension, severe emotional distress, grief, apprehension, loss of enjoyment of life, injury to his dignity, injury to his health, defamation, and many other harms and damages." Am. Compl. ¶ 499. The Amended Complaint seeks to frame the claim under all four theories of the tort.

To state such a claim under Pennsylvania law, the plaintiff must show one of the following factual scenarios: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and

reasonably feared impending physical injury; *or* (4) the plaintiff observed a tortious injury to a close relative." *Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 272 (E.D. Pa. 2015) (emphasis added). Additionally, there must be an allegation of physical harm and emotional disturbance that is recurring and tantamount to an illness. *Id.* at 273. Mr. Kovalev's emotional distress claim fails under each theory.

First, Mr. Kovalev asserts in only a conclusory fashion that the defendants owed him a duty of care based upon a special relationship. The Pennsylvania Supreme Court has extended this kind of liability "to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of a breach." *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa. 2011). This type of relationship has most frequently been found in relationships related to burial and the doctor-patient relationship. *Id.* at 92. Mr. Kovalev fails to elaborate at all as to how his relationship with defendants is so "special" as to potentially cause deep emotional harm. While Labcorp Holdings' business is quasi-medical, there is no assertion in the amended complaint that the relationship between Labcorp Holdings and its customers approaches a doctor-patient relationship, with such levels of trust that a breach of the trust would result in profound emotional injury.

Second, Mr. Kovalev alleges that he "suffered a physical impact and Plaintiff was in danger and at risk of an immediate injury." Am. Compl. ¶ 493. "The office of the impact rule is to guard against feigned claims by requiring physical evidence to substantiate the alleged impingement of the defendant's negligence on the psyche of the plaintiff, and by assuring that the danger perceived by the plaintiff was not imaginary." *Plummer v. United States*, 580 F.2d 72, 76 (3d Cir. 1978). Mr. Kovalev's bald assertion that he suffered a "physical impact" without elaborating further is plainly inadequate to proceed under this category of NIED claims.

Third, Mr. Kovalev avers that he "was in a zone of danger and reasonably experienced a fear of impending injury." Am. Compl. ¶ 481. "Under the zone of danger theory, a plaintiff may recover if [ ]he (1) was in personal danger of physical impact because of the direction of a negligent force against h[im] and (2) actually feared the physical impact." *Russell v. Educ.Comm'n for Foreign Med. Graduates*, 603 F. Supp. 3d 195, 205 (E.D. Pa. 2022). Mr. Kovalev appears to be shoehorning his claim into this third emotional distress factual scenario. He does not elaborate on the bounds of the zone of danger. Indeed, as a threshold matter, it is not even clear that any "force" directed at Mr. Kovalev by Labcorp Holdings or its employees or agents qualified as "negligent," as the Amended Complaint posits that the defendants intentionally inflicted emotional distress upon him. Am. Compl. ¶ 481; *see also Gillespie v. Pa. State Police*, 574 F. Supp. 3d 272, 287 (E.D. Pa. 2021).

Fourth, Mr. Kovalev asserts that he "personally observed a tortious injury inflicted to [sic] him in Labcorp's centers." Am. Compl. ¶ 481. "[B]ystanders outside of the zone of danger [may] obtain recovery in certain circumstances for emotional distress brought on by witnessing the injury or death of a *third party* (who typically must be a close relative of the bystander) . . . ." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 549 (1994). A plain reading of the caselaw does not support an allegation that a plaintiff can qualify as his own "close relative" for purposes of this tort.

Therefore, Mr. Kovalev has failed to make a claim for negligent infliction of emotional distress under any of the acceptable factual scenarios, and Count XV is dismissed.

### 15. Count XVI: Intentional Infliction of Emotional Distress

Mr. Kovalev next argues that defendants "intentionally and recklessly inflicted emotional distress and emotional trauma" on him. Am. Compl. ¶ 503. Labcorp Holdings argues that Mr. Kovalev's allegations fail to rise to the level of such outrageous behavior as to give rise to such a claim.

In order for this kind of claim to survive, the plaintiff must plead the following elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 445 (M.D. Pa. 2020). The conduct alleged must be truly appalling— "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages." Restatement (Second) of Torts § 46 cmt. d; *see Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (collecting cases where conduct qualified as extreme and outrageous, including a hit and run where the defendant driver failed to alert authorities or seek medical help and buried a victim who was discovered months later; intentional fabrication of records to frame a plaintiff in a homicide; and a football team physician publicly claiming that a football player was dying from a fatal disease, which the physician knew to be false).

Mr. Kovalev's allegations do not come close to approaching this type of conduct. Accepting his claims as true, he was publicly and loudly admonished within earshot of bystanders and then escorted out of a patient service center. Perhaps this treatment could have been humiliating under some exacerbated conditions, but as described, it does not supply a basis for an intentional infliction of emotional distress claim.

Count XVI is, therefore, dismissed.

### 16. Count XVII: Reckless Endangerment

Mr. Kovalev asserts a civil claim of reckless endangerment, based on 18 Pa. Cons. Stat. § 2705, a criminal statute. That statute states, in its entirety, that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa. Cons. Stat. § 2705.

Despite Mr. Kovalev's claim that "Pennsylvania has a well-settled approach allowing bringing a civil claim that is related to violations of a criminal statute, as long as such claim is litigated as civil tort," Am. Compl. ¶ 519, in Pennsylvania, there is simply no civil remedy under this statute. *Muhammad v. City of Lewisburg, PA*, No. 21-cv-284, 2022 WL 774880, *6 (M.D. Pa. Jan. 20, 2022). Construing Mr. Kovalev's Amended Complaint liberally, he may be trying to assert a claim under 42 Pa. Cons. Stat. § 8309. Nevertheless, such a claim still fails for the same reason that Counts V and VII failed—Mr. Kovalev has not plausibly alleged that any defendants had "malicious intentions toward [his] race, color, religion or national origin." 18 Pa. Cons. Stat. § 2710(a).

Count XVII is also dismissed for failure to state a claim.

### 17. Count XVIII: Defamation, Defamation Per Se, and Defamation by Implication

Count XVIII asserts claims of defamation, defamation *per se*, and defamation by implication. Mr. Kovalev asserts that "shouting about calling police, closely following [Mr. Kovalev] in extremely aggressive manner and hitting [Mr. Kovalev's] telephone that he was holding in his hands . . . represent[ ] the classic example of defamation." Am. Compl. ¶ 544.

In a defamation action under Pennsylvania law, the plaintiff has the burden to show:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat § 8343. In defamation actions, it falls to courts to first determine whether a statement is even capable of defamatory meaning as a matter of law. *Mallory v. S&S Publishers*, 168 F. Supp. 3d 760, 767 (E.D. Pa. 2016). A statement is defamatory if it "tends so to harm the

34

reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). It is not enough for a statement to embarrass or annoy the claimant. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014). Under a theory of defamation by implication, defamation may be established when a statement creates a false implication when considered in context. Apparently in the alternative, Mr. Kovalev asserts a claim of defamation *per se*. A statement is defamatory *per se* if it "imput[es] (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999).

Mr. Kovalev's claim fails at the threshold because he has not alleged any statement, let alone any defamatory statement, made by a defendant. As Labcorp Holdings argues, a direction to leave a premises, even accompanied by a threat of calling the police, does not qualify as a defamatory statement. The Amended Complaint does not set forth any derogatory or insulting language levied by any defendant toward Mr. Kovalev, and even if it did, if such statements were merely annoying or embarrassing, they would not arise to a basis for a defamation claim. Because no statement has been identified, it is clear that none of the four defamation *per se* categories has been implicated. Mr. Kovalev's understanding that there is "no need to explicitly communicate defamatory statements in the context of ordinary speech" per the legal doctrine of defamation by implication demonstrates a flawed understanding—a statement must still be alleged under this theory. Am. Compl. ¶ 539.

Moreover, Mr. Kovalev has alleged only that at least one other person was present in the waiting room at the time of the events alleged in his Amended Complaint, and others may have been able to hear the events from adjacent rooms. Mr. Kovalev does not meet his burden of

showing that one person witnessing this event meaningfully lowered his standing in the community. Nor does he assert any facts that would show that his reputation suffered as a result of the alleged confrontation.

For these reasons, Mr. Kovalev has failed to state a claim, and Count XVIII is dismissed.

### 18. Count XIX: Invasion of Privacy – Intrusion Upon Seclusion

The penultimate claim in the Amended Complaint is a claim for intrusion upon seclusion because the defendants disclosed Mr. Kovalev's personal information, including his full name, in front of other business invitees at Labcorp's service center.

Under Pennsylvania law, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B; *see Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). The intrusion can be a "physical intrusion into a place in which the plaintiff has secluded himself," "the use of the defendant's senses to oversee or overhear the plaintiff's private affairs," or "some other form of investigation or examination into [a plaintiff's] private concerns." Restatement (Second) of Torts § 652B cmt. b. A court may decide whether the intrusion was "highly offensive" as a matter of law at the pleading stage. *Boring v. Google Inc.*, 362 F. App'x 273, 279 (3d Cir. 2010). The Third Circuit Court of Appeals has concluded that "an actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act. *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989).

The mere disclosure of a full name in a waiting room is not untoward, unfamiliar, or highly offensive to a reasonable person. As Labcorp Holdings notes, full names are contained in countless public records, and therefore are not subject to a reasonable expectation of privacy. Moreover, Mr.

36

Kovalev refused to supplement his full name with additional identifying information, including his date of birth or the revelation of his full face such that his identity could be verified. Mr. Kovalev's claim fails first on this basis.

Moreover, although Mr. Kovalev avers that the defendants "intentionally" invaded his affairs, he does not allege that any defendant believed, or was substantially certain, that she lacked the requisite permission to state Mr. Kovalev's name aloud. Indeed, the Amended Complaint suggests that any defendant's attempts to confirm Mr. Kovalev's identity was to register him for his blood draw appointment.

Because Mr. Kovalev has failed to adequately plead a claim of intrusion upon seclusion, Count XIX is dismissed.

### 19. Count XX: Breach of Contract or Breach of Implied Contract

Finally, Mr. Kovalev asserts a claim of breach of contract or breach of implied contract, arguing that Mr. Kovalev entered into a binding contract, or alternatively an implied contract, with Labcorp when he registered as a patient on Labcorp's electronic system.

To assert a breach of contract claim, Mr. Kovalev must plausibly show the following: "(1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." *Hollenshead v. New Penn Fin.*, LLC, 447 F. Supp. 3d 283, 291 n.3 (E.D. Pa. 2020). "[I]t is axiomatic that a contract may be manifest orally, in writing, or as an inference from the acts and conduct of the parties." *J.F. Walker Co., Inc. v. Excalibur Oil Grp, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). But like all other contracts, implied contracts only exist if all parties agree on the materials terms of the bargain and there is adequate consideration. *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp. 3d 417, 428 (E.D. Pa. 2019).

Mr. Kovalev states that the alleged contract provided as follows: "Labcorp will be providing proper, safe, legitimate, compliant with all sanitary norms and regulations laboratory services, including proper, safe, legitimate, compliant with all sanitary norms and regulations blood collection services. In exchange for proper services, Plaintiff will allow Labcorp to bill his health insurance company, or will be paying for such services himself." Am. Compl. ¶ 575.

Mr. Kovalev has not shown any resultant damage. He does not allege that he incurred any out-of-pocket expense, but rather asserts that he was traumatized by the alleged breach and experiences ongoing mental anguish since the alleged breach. These emotional damages "are not cognizable as damages in a breach of contract case without physical injury." *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 364 (E.D. Pa. 2015).

Count XX is dismissed.

### 20. Motion to Strike Prayer for Declaratory and Injunctive Relief

Labcorp Holdings moves to strike from Mr. Kovalev's Amended Complaint his prayer for declaratory and injunctive relief. Labcorp Holdings avers that Mr. Kovalev has neither alleged entitlement to injunctive relief nor specified what type of injunctive relief he seeks. Labcorp Holdings also argues that the requested declaratory relief is improper. Mr. Kovalev argues that a 12(b)(6) motion is not the appropriate vehicle to request dismissal of prayers for relief. He is incorrect.

"Traditionally, when a plaintiff seeks damages that are not recoverable, a defendant will move to dismiss the prayer for that particular relief under Federal Rule of Civil Procedure 12(b)(6)." [10] *China Max, Inc. v. South Hills CN LLC*, No. 14-cv-211, 2015 WL 3407869, at *3

---

[10]     As Labcorp Holdings does not invoke Federal Rule of Civil Procedure 12(f), the Court construes this motion as a motion to dismiss the requested relief under Federal Rule of Civil Procedure 12(b)(6).

(W.D. Pa. May 27, 2015). Mr. Kovalev's request for declaratory relief is not appropriate because his claims are based on alleged violations that occurred on a single, if—to him—eventful, day. Declaratory judgments are not "meant simply to proclaim that one party is liable to another." *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014). Mr. Kovalev's vague requests for injunctive relief are also unavailing, given that he has not demonstrated a likelihood of suffering future injury. *See City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983).

Mr. Kovalev's prayer for declaratory and injunctive relief is dismissed.

### 21. Motion to Strike Claim for Punitive Damages

Mr. Kovalev also requests punitive damages of $10,000,000 for conduct intolerable to society. Labcorp Holdings argues that Mr. Kovalev's allegations are insufficient to establish liability for compensatory damages under *any* theory, let alone punitive damages.

Punitive damages are reserved for "only the most exceptional matters." *In re Lemington Home for Aged*, 777 F.3d 620, 633 (3d Cir. 2015). In Pennsylvania, the fact-finder must determine that the defendant acted with evil motive or reckless indifference to justify an award of punitive damages. *Brand Marketing Grp. LLC v. Intertek Testing Servs., N.A.*, 801 F.3d 347, 360 (3d Cir. 2015). The Court is permitting only Count I, a claim of assault and battery, to proceed. As presently configured and after dismissing the unsupported hyperbole as discussed above, the current claim for punitive damages cannot stand.

Mr. Kovalev's prayer for punitive damages is dismissed without prejudice. Mr. Kovalev may reallege his entitlement to punitive damages following discovery on his single remaining claim, if necessary.

### III.     Motion to Dismiss Improper Defendants

Defendants Labcorp, Labcorp Holdings, Labcorp Staffing, and Mr. Schechter (the "Moving Defendants") have filed a motion to dismiss this action against defendants Labcorp

Center – 7001 Frankford Avenue, Labcorp Center – 7439 Frankford Avenue, and Labcorp Center – 882 Frankford Avenue, Jane Doe I, Jane Doe II, and Jane Doe III pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). The Moving Defendants argue that dismissal of these entities or persons is required because, with regard to the Labcorp locations, they are nonexistent legal entities or, with regard to the Jane Doe defendants, the real defendants were never properly served and Mr. Kovalev has failed to show good cause for such failure, or even tried to explain his inaction.

### A. Individual Labcorp Center Defendants

Federal Rule of Civil Procedure 4 sets forth the requirements of issuing and serving a summons and complaint. Fed. R. Civ. P. 4. A motion to dismiss pursuant to Rule 12(b)(4) challenges noncompliance with provisions regarding the content or issuance of the summons, while a motion to dismiss under Rule 12(b)(5) relates to the method of service or lack thereof. Fed. R. Civ. P. 12(b)(4), (b)(5); *see also McDonald v. SEIU Healthcare Pa.*, No. 13-cv-2555, 2014 WL 4672493, at *6 (M.D. Pa. Sept. 18, 2014). Rule 12(b)(4) applies where a summons and complaint are deficient in naming the proper defendant, including by filing suit against an entity that does not exist. *Cropp v. Golden Arch Realty Corp.*, No. 08-cv-0096, 2009 WL 10710585, at *2 (D.S.C. Mar. 31, 2009). "If there is no such entity as a captioned defendant, all claims against that non-existent entity must be dismissed." *Id.* Where a challenge has been raised as to the validity of service, the burden lies with the plaintiff to prove validity by a preponderance of the evidence. *Hsueh v. Bank of Am. Human Res.*, No. 19-cv-20408, 2020 WL 5810563, at *1.

Here, the Moving Defendants contend that Labcorp Center – 7001 Frankford Avenue, Labcorp Center – 7439 Frankford Avenue, and Labcorp Center – 882 Frankford Avenue are legally nonexistent entities not properly subject to this suit. Mr. Kovalev fails to overcome this challenge, submitting no affidavit, deposition, or oral testimony that would persuade this Court that the

Labcorp Centers at the listed locations are separate and distinct legal entities. Instead, he states in conclusory fashion that each location has a distinct legal identity and submits an internet search that indicates that Labcorp *may* franchise locations, without supporting any inference that the three specific locations named as defendants are in fact franchised facilities.

Because Mr. Kovalev has failed to meet his burden, Labcorp Center – 7001 Frankford Avenue, Labcorp Center – 7439 Frankford Avenue, and Labcorp Center – 882 Frankford Avenue are dismissed as defendants pursuant to Federal Rule of Civil Procedure 12(b)(4).

### B. Jane Doe Defendants

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name every party. Fed. R. Civ. P. 10(a). However, that rule is silent as to the use of fictitious names of defendants. Typically, the use of "Jane Doe" or "John Doe" defendants is permitted by courts for only a finite amount of time, while the plaintiff ascertains their actual identities. *Givens v. Naji*, No. 17-cv-222, 2019 WL 4737618, at *1 (W.D. Pa. Sept. 11, 2019). If ignorance of a Jane Doe's actual identity is the product of lack of reasonable inquiry, then a complaint is properly dismissed without prejudice. *Stratton v. City of Bos.*, 731 F. Supp. 42, 45 (D. Mass. 1989).

Federal Rule of Civil Procedure 4(m) prescribes the amount of time a plaintiff has to serve defendants with summonses and copies of his complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The three Jane Doe defendants were named in the Amended Complaint filed on March 11, 2022. Upon Mr. Kovalev's motion, the Court granted him an additional 45 days to serve the Jane Doe defendants on June 14, 2022. Counsel for Moving Defendants provided Mr.

Kovalev with the actual identities of the three Jane Doe defendants over a month prior to the Court's extended service deadline. And, yet, Mr. Kovalev has taken no action.

When the deadlines set forth in Rule 4(m) have not been met, a district court (1) determines whether good cause exists for an extension of time and if it does, grants the extension, and (2) if no good cause exists, decides in its discretion whether to dismiss the case without prejudice or extend time for service. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). To show good cause, a plaintiff must demonstrate good faith in seeking the extension and a reasonable basis for noncompliance with the 90-day rule. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).

Mr. Kovalev has not demonstrated good cause to this Court. In his response to the Moving Defendants' motion, he does not address how he used appropriate diligence during his 45-day extension to properly serve the persons identified as Jane Does I, II, and III. Nor does he address the Moving Defendants' contention that their counsel produced the actual identities of the Jane Does to Mr. Kovalev over a month before the expiration of the extended service deadline. Instead, he continues to contend that each defendant was properly served when he caused six copies of the Amended Complaint and Summons to be handed to a purported manager at a Labcorp center located at 9331 Old Bustleton Avenue in Philadelphia.

Given the absence of any good faith effort to properly serve the three Jane Doe defendants, notwithstanding this Court's grant of an enlargement of time and what appears to be reasonable cooperation of the Moving Defendants, dismissal of the Jane Doe defendants is appropriate pursuant to Federal Rule of Civil Procedure 4(m).

### IV.    Mr. Kovalev's Motion to Amend His Complaint

Federal Rule of Civil Procedure 15 states that, other than an amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, district courts have discretion to deny such a motion "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003).

Mr. Kovalev seeks to amend the Amended Complaint by adding the real names of the persons he formerly identified as Jane Doe I, Jane Doe II, and Jane Doe III. Mr. Kovalev continues to argue—incorrectly—that the Jane Doe defendants were properly served on July 28, 2022, and he does not confront Labcorp's, Labcorp Holdings', Labcorp Staffing's, and Mr. Schechter's arguments that he was informed of the Jane Doe defendants' true identities by mid-June 2022. Mr. Kovalev has already amended his complaint once as a matter of course. He does not address why he only moved to amend his complaint over two months after the expiration of the extended deadline to serve the as-identified Jane Doe defendants. Mr. Kovalev argues nothing that would persuade this Court that his actions have been anything other than unduly dilatory, or that amendment would be anything but futile, given Mr. Kovalev's failure to properly serve the Jane Doe defendants.

Therefore, Mr. Kovalev's motion to amend is denied.[11]

---

[11]    The dismissals of the causes of action as explained in this memorandum are, at this juncture, not with prejudice. If Mr. Kovalev endeavors to cure some or all of the many defects, he may undertake to secure permission to file yet another amended complaint once he has presented a proper motion seeking leave to do so, together with a proposed amended complaint.

## V.     Mr. Kovalev's Motions to Strike Motions to Dismiss Filed by Labcorp and Labcorp Holdings

Mr. Kovalev seeks to strike the motions to dismiss filed by Labcorp and Labcorp Holdings, claiming that the motions were untimely filed.

Federal Rule of Civil Procedure 12 permits a party to move a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 15 states that, "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3) (emphasis added).

This Court issued an order granting Labcorp and Labcorp Holdings 21 days from March 18, 2022 to respond to Mr. Kovalev's Amended Complaint. Labcorp and Labcorp Holdings filed their responses timely on April 8, 2022. Therefore, there is no violation of Rule 15, and no basis upon which the Court could grant Mr. Kovalev's motion under Rule 12(f).

Mr. Kovalev's motions to strike are therefore denied.

### CONCLUSION

Mr. Kovalev's attempt to state viable legal claims based on his Labcorp experience is akin to getting blood from a stone. He has not alleged sufficient facts for the majority of his Amended Complaint to survive the various motions to dismiss before the Court. For the foregoing reasons, Labcorp's, Labcorp Staffing's, and Mr. Schechter's Motions to Dismiss are granted, and they are no longer defendants in this case. The Motion to Dismiss Improper Defendants is granted without prejudice, such that the defendants Jane Doe I, Jane Doe II, Jane Doe III, Labcorp Center – 7001 Frankford Avenue, Labcorp Center – 7439 Frankford Avenue, and Labcorp Center – 882 Frankford Avenue are dismissed from this case as well. As to Labcorp Holdings, the claim for

assault and battery (Count I) remains, while the claims presented in all other Counts II through XX are dismissed, as is Mr. Kovalev's prayer for injunctive and declaratory relief and punitive damages. Mr. Kovalev's Motion to Amend Complaint is denied, as are his Motions to Strike.

Appropriate orders follow.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE