IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SERGEI KOVALEV** | : CIVIL ACTION |
| v. | : NO. 22-552 |
| **LABORATORY CORPORATION OF AMERICA HOLDINGS** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                       June 13, 2024

Serial Philadelphia litigant Sergei Kovalev is now suing Laboratory Corporation of America Holdings claiming its agents assaulted and battered him when asking him to leave its private testing center while he filmed them performing services in the hope of proving they harmed him. He pulled out his cell phone to videotape his communications with Labcorp employees who asked for his birthday. They asked him to leave its private business when he would not comply with their requests. He refused to leave. He claims the employees then assaulted him and engaged in offensive touching of his cell phone taping them in his hand. We carefully and repeatedly studied the video on Mr. Kovalev's cellphone which he claims is absolute proof. He is correct but not in his favor. His cellphone video confirms no reasonable person would find Labcorp employees harassed, assaulted, or battered him. The evidence is now before us with the parties' agreement the video tells the story. No reasonable person could possibly find an assault or battery based on Mr. Kovalev's video. We grant Labcorp's Motion for summary judgment and dismiss the remainder of Mr. Kovalev's case with prejudice. Our denial based on undisputed video evidence requires we deny post-deadline discovery and cross-motions for sanctions including for Mr. Kovalev's repeated refusal to comply with court ordered discovery.

I.  **Undisputed Facts**

Philadelphian Sergei Kovalev went to four different Labcorp patient service centers in Philadelphia on November 30, 2021 for prescribed lab work.[1] He left the first two centers dissatisfied with their service. He then self-registered for his lab work at a third center using his driver's license and waited in the reception area.[2]

A Labcorp employee at the third center called his name and asked for his date of birth and health insurance card.[3] Mr. Kovalev refused to provide his date of birth and instead gave the employee his driver's license and health insurance card.[4] The Labcorp employee again asked Mr. Kovalev for his date of birth but he refused asserting privacy rights under the Health Insurance Portability and Accountability Act of 1996.[5] The employee refused Mr. Kovalev's driver's license and called her supervisor.[6] The supervisor told the employee to accept Mr. Kovalev's driver's license as proof of his date of birth.[7] The employee asked Mr. Kovalev to remove his mask to compare his face with the photo on the driver's license.[8] Mr. Kovalev refused to remove his mask.[9]

Mr. Kovalev alleges the Labcorp employee began shouting at him to leave the premises or she would call the police.[10] Mr. Kovalev then began recording on his cell phone his interaction with Labcorp employees on November 30, 2021. Mr. Kovalev began to record his interaction with Labcorp employees "[t]o prevent imminent physical attack by [its] out-of-control, totally unbalanced and dangerous employees, and to deter/discourage [its] employees from criminal activities of physically attacking [him] … ."[11]

There is no dispute Mr. Kovalev's video is in the record for our consideration on summary judgment.[12] Mr. Kovalev asserts his one minute and ten second video (total of seventy seconds) "clearly show[s] assault and battery" by Labcorp's employees precluding summary judgment. We reviewed the video (with audio) and conclude it wholly contradicts Mr. Kovalev's allegations.[13]

His video confirms Mr. Kovalev did not leave. He instead used his cell phone to videotape his interaction with the Labcorp employees. Mr. Kovalev eventually left for a fourth Labcorp patient service center where he successfully completed his lab work.[14]

### *Mr. Kovalev sued multiple Labcorp entities, its Chief Executive Officer, and Labcorp employees.*

Mr. Kovalev filed yet another pro se case in this Court seeking relief.[15] He first sued multiple Labcorp entities, its Chief Executive Officer, and Labcorp employees in the Philadelphia Court of Common Pleas, later removed by Defendants. Mr. Kovalev filed an amended Complaint asserting twenty claims, including civil rights violations alleging Labcorp's African American employees discriminated against him because he is white.[16]

Judge Pratter, in a forty-five page opinion, dismissed all of Mr. Kovalev's claims against all parties except for a common law assault and battery claim against Laboratory Corporation of America Holdings.[17] Judge Pratter also denied Mr. Kovalev's motion to amend his complaint without prejudice.[18]

He now stands on assault and battery allegations plainly contradicted by his videotape. Mr. Kovalev alleges the conduct of Labcorp's employees caused him to "fear for his life, safety, and well–being."[19] Mr. Kovalev alleges Labcorp's employees:

- "shouted" at him to leave and threatened him with calling the police;[20]

- "cornered" him and "display[ed] extreme hostility against a White person Plaintiff [sic] to the point that [he] started to fear for his life and realized that these [employees] most likely would physically attack him" and the two employees "stay[ed] right next to [him] and … display[ed] all signs of imminent physical attack against [him] if he [did not] leave Labcorp immediately";[21]

- when one employee "started shouting at [him], she rose from her chair, as it appeared for preparation to attack [him] physically";[22]

Mr. Kovalev alleges a Labcorp employee battered him:

- "Hit[] with her open hand [his] cellular telephone that he was holding in his hand and she almost knocked [his] telephone out of his hand."[23]

Mr. Kovalev later mentioned (but did not plead mindful of Rule 11) another touching when he asserted a Labcorp employee "grabb[ed] his arm without his permission and she ... physically push[ed] him forward" to the exit and "with her open hand hit, crushed, and smashed [his] hand and his cellular phone ... [held] in his hand."[24] Mr. Kovalev chose not to depose the Labcorp employees seen and heard on the videotape. He relies entirely upon his videotape.

## II. Analysis

Labcorp moved for summary judgment arguing Mr. Kovalev cannot show a prima facie case of assault and battery. Mr. Kovalev responded the cell phone video proves Labcorp employees assaulted and battered him. Mr. Kovalev relies entirely on the cell phone video he asserts shows Labcorp employees assaulted and battered him, including "grabbing" his arm, physically pushing him, and hitting, crushing, and smashing, with open hand, his cell phone he held in his hand. He alleges conduct placing him in fear of his life.

The video contradicts Mr. Kovalev's story. The Supreme Court directs where a plaintiff's version of events "is so utterly discredited by the record" – here, the lynchpin video – no reasonable jury could find a genuine fact issue and we may enter summary judgment in favor of Labcorp.[25]

### A. There is no basis to find assault or battery under Pennsylvania law.

Mr. Kovalev continues to argue his videotape "automatically" proves Labcorp employees assaulted and battered him during the seventy-second video. We see no possible basis for this conclusion.

Assault is an intentional tort under Pennsylvania law defined as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing

4

an apprehension of such battery."[26] The Restatement (Second) of Torts § 21 defines civil assault: "(1) An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension. (2) An action which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for an apprehension caused thereby although the act involves an unreasonable risk of causing it and, therefore, would be negligent or reckless if the risk threatened bodily harm."[27]

Threatening words alone are insufficient to put a person in reasonable apprehension of harmful or offensive conduct.[28] The actor making the threat must be in a position to carry out the threat immediately and must take some affirmative action to do so.[29]

An assault requires two elements: (1) intent to cause a harmful or offensive contact; and (2) "immediate apprehension" of harmful or offensive contact. If the action is taken without intent, there is no assault even though the conduct would be negligent or reckless if the risk threatened bodily harm.[30] Mr. Kovalev must cite to record evidence to show the Labcorp employees intended to cause a harmful or offensive contact. He must also show imminent apprehension of a harmful or offensive contact.[31] Mr. Kovalev's apprehension of harmful or offensive bodily contact must be objectively reasonable; that is, the actions of the Labcorp employees must objectively place a reasonable person in fear of imminent harmful conduct.[32]

Battery is an intentional tort under Pennsylvania law defined as "an act done with the intent to cause a harmful or offensive contact with the body of another, and directly results in the harmful or offensive contact with the body of another."[33] The Restatement (Second) of Torts § 18 defines battery: "(1) An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent

5

apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results. (2) An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a mere offensive contact with the other's person although the act involves an unreasonable risk of inflicting it and, therefore, would be negligent or reckless if the risk threatened bodily harm."[34] A "bodily contact is offensive if it offends a reasonable sense of personal dignity."[35]

Labcorp seeks summary judgment arguing the cell phone video shows its employees did not act with intent to cause a harmful or offensive contact with Mr. Kovalev. Labcorp asserts a reasonable jury could not find intent to inflict harmful or offensive bodily contact and the video shows neither words nor actions to establish an assault or battery. Labcorp contends the only record evidence is Mr. Kovalev's cell phone video.

Mr. Kovalev agreed at oral argument the only evidence relevant to the summary judgment motion is his cellphone video. He argued the video tells the whole story and it clearly shows Labcorp employees assaulted and battered him, with one employee "slapping" his cell phone he held in his hand. Mr. Kovalev cites no other evidence. He asserted at oral argument essentially a *res ipsa loquitor* theory, arguing the fact the Labcorp employees approached him, asked him to leave, and guided him to the exit "automatically" proves an assault and battery.[36]

We reviewed and studied Mr. Kovalev's cell phone video multiple times. The seventy second video shows two Labcorp employees' interaction with Mr. Kovalev. One employee remained behind a glass partition at her desk the entire length of the video. She moved her chair behind a partition once she saw Mr. Kovalev recording her in her private place of business so she could not be recorded. She literally moved away from Mr. Kovalev. A second employee asked Mr. Kovalev to stop recording her. She kept her hand up to block her face. She repeatedly told Mr.

6

Kovalev "you have to go," pointing to the exit. Mr. Kovalev refused to leave and continued to argue with the employees. The alleged assault and battery occurred at around seconds forty-five and forty-six of the video when the second employee and Mr. Kovalev stood at the door to the facility and her hand appears off-screen.

Mr. Kovalev's video confirms no employee hit, pushed, or slapped Mr. Kovalev. No employee "grabbed" him. No employee "attacked" him as he somehow swore at his deposition. At best, the hand of the employee showing Mr. Kovalev to the door appears out of view near his shoulder. There is nothing on Mr. Kovalev's video to suggest bodily contact offending a reasonable sense of personal dignity. There is nothing on his video creating a genuine issue of fact regarding the employees' intent to inflict harmful or offensive bodily contact. The Labcorp employees' conduct could not put an objectively reasonable person in fear of harmful or offensive bodily contact.

We are guided by the Supreme Court's decision in *Scott v. Harris*.[37] We may enter judgment in favor of Labcorp where the video is "blatantly" inconsistent with Mr. Kovalev's version of events.[38] In *Scott*, the Supreme Court considered whether police may, consistent with the Fourth Amendment, attempt to stop a fleeing motorist from continuing public-endangering flight by ramming the motorist's car from behind. Police chased a speeding car around a shopping center, other motorists, and populated areas. The police rammed the back of the car causing it to leave the roadway and crash, leaving the fleeing motorist a quadriplegic.[39] The fleeing motorist sued police under section 1983 for excessive force. The defendant police officer moved for summary judgment on qualified immunity. Judge Hunt in the district court denied the motion finding genuine issues of material fact precluding summary judgment. The United States Court of Appeals for the Eleventh Circuit affirmed.

7

The Supreme Court reversed. The Court focused on a videotape of the chase, finding it "quite clearly contradicts the version of the story told by [plaintiff motorist] and adopted by the Court of Appeals."[40] For example, the plaintiff motorist asserted the chase occurred on empty roads with no threat to pedestrians and other motorists. The Court held summary judgment should have been granted because the driver's version of the events "is so utterly discredited by the record" – including the lynchpin videotape – no reasonable jury could have believed him and the Court of Appeals "should have viewed the facts in the light depicted by the videotape."[41]

We are also guided by our Court of Appeals's analysis in *Tindell v. Beard* affirming summary judgment in favor of prison officials and medical staff who plaintiff prisoner claimed stole his legal materials and were deliberately indifferent to his serious medical needs.[42] The video contradicted the inmate's allegations, including allegations of excessive force when confiscating the inmate's property. Our Court of Appeals concluded no reasonable factfinder could view the video of the incident and conclude prison officers acted maliciously.[43]

Mr. Kovalev's video taken by him to somehow set up the Labcorp employees plainly contradicts Mr. Kovalev's assertion the employees "attacked" him, slapped, grabbed and pushed him and the employee showing him to the door "with her open hand hit, crushed, and smashed [his] hand and his cellular phone … [held] in his hand."[44] This conduct does not appear on his video which he claims proves his case. Viewing the evidence in the light most favorable to Mr. Kovalev, no reasonable fact finder could view the video of the incident—and Mr. Kovalev maintains this is the ***only*** evidence we need to consider in deciding summary judgment—and determine the Labcorp employees intended to cause a harmful or offensive contact with him or an offensive bodily contact offending a "reasonable sense of personal dignity" occurred. We grant summary judgment in favor of Labcorp.

8

### B. We deny remaining motions as moot.

There are a host of pending motions we group into three categories: (1) Mr. Kovalev's Rule 56(d) Motion; (2) Mr. Kovalev's discovery motions; and (3) cross-motions for sanctions. We deny all as moot.

#### 1. We deny Mr. Kovalev's Rule 56(d) Motion as moot and without merit.

Mr. Kovalev chose to both respond to Labcorp's Motion for summary judgment and separately move moved under Rule 56(d) swearing he needs additional discovery to respond to summary judgment.[45] Mr. Kovalev does not identify discovery he needs to respond to summary judgment. And at oral argument, he represented his entire case rests on his cell phone video. He complains of Labcorp's "deceitfulness" in discovery and failure to comply with discovery.[46]

His arguments entirely lack merit. Mr. Kovalev filed three motions last August to compel Labcorp to produce all requested documents and answers to interrogatories without objections and for sanctions and his requests for admissions to be deemed admitted.[47] Labcorp moved for a protective order under *Pansy*.[48] Judge Pratter denied Mr. Kovalev's motions to compel, denied his motion to have the requests for admissions deemed admitted, granted Labcorp's Motion for protective order, and entered the protective order.[49] Mr. Kovalev immediately appealed Judge Pratter's discovery Order, and other Orders, to our Court of Appeals. Our Court of Appeals dismissed the appeals for lack of jurisdiction over non-final decisions on December 5, 2023.[50] He unsuccessfully argued his Motions to compel to Judge Pratter. There is no merit to Mr. Kovalev's Rule 56(d) Motion and we deny it.

9

## 2. We deny Mr. Kovalev's discovery motions.

Mr. Kovalev has two discovery motions pending since September and November, 2023.[51] We deny these motions as moot and on the merits for the same reasons we explained in denying Mr. Kovalev's Rule 56(d) Motion.

## 3. We deny the cross-motions for sanctions.

We deny three pending cross-motions for sanctions: two by Labcorp and the other from Mr. Kovalev.[52] The discovery issues have no bearing on the dispositive video from Mr. Kovalev's phone.

Labcorp moved for sanctions against Mr. Kovalev for his failure to produce his medical records and execute medical authorizations for his medical providers Judge Pratter ordered him to produce nine months ago.[53] Labcorp moved for sanctions asking Judge Pratter to: (1) dismiss Mr. Kovalev's damages claims for personal injuries, physical and mental, striking any allegations of such injuries in the amended Complaint; and (2) prohibit Mr. Kovalev from offering testimony or evidence regarding such damages at trial. It also seeks reasonable expenses and attorney's fees for preparing the Motion.

Labcorp then moved for sanctions against Mr. Kovalev for failing to appear for his Rule 35 medical examination Judge Pratter ordered him to complete by September 28, 2023.[54] Labcorp asked Judge Pratter to dismiss Mr. Kovalev's case for failing to comply with her Order requiring him to appear for a Rule 35 examination. Labcorp also asked Judge Pratter to dismiss the damages claims for emotional distress and psychic injuries, strike those allegations from the amended Complaint, and prohibit testimony or evidence regarding such damages at trial.

Mr. Kovalev represented at our recent oral argument he has no relevant documents to produce and believes his appeal from Judge Pratter's non-final order stayed his discovery

10

obligations despite the appeal being dismissed six months ago. Mr. Kovalev never produced medical records and signed medical authorizations, and never submitted to a Rule 35 medical examination despite Judge Pratter's Order. Flouting two of Judge Pratter's discovery orders is troublesome conduct. But we need not wade into the sanctions motions as we today grant summary judgment to Labcorp based on the dispositive video.

Mr. Kovalev moved for sanctions against Labcorp for its filing of its second motion for sanctions.[55] Mr. Kovalev argues Judge Pratter's Order requiring him to appear for a Rule 35 examination "gravely affecting [his] privacy, legal and constitutional rights" which he appealed.[56] Mr. Kovalev asserts Labcorp's moving for sanctions while his appeal pended is an abuse of legal process and for an improper purpose. This argument is entirely without merit. We dismiss it on its merits and because it is now moot.

### III. Conclusion

Mr. Kovalev recorded Labcorp employees in a private place of business to show they violated his understanding of his civil rights. Judge Pratter dismissed all his claims on the pleadings other than allowing Mr. Kovalev the ability to proceed into several months of discovery on his common law assault and battery claim. Mr. Kovalev did not depose anyone but relies entirely on the seventy-second video of the interaction to show Labcorp "automatically" is liable for assault and battery. But the video confirms the Labcorp employees did not assault him nor did they batter him. No reasonable jury could find Labcorp's employees asking him to leave the private premises while he recorded them and created havoc is an assault and battery. We grant Labcorp's motion for summary judgment and close this case.

---

[1] Defendant's Statement of Undisputed Material Facts ("SUMF"), ECF No. 126-2, ¶ 19. For ease of reference, we refer to Defendant Laboratory Corporation of America Holdings as "Labcorp." Mr. Kovalev denied all of Labcorp's SUMF, including the date of the event forming the basis of his claims. *See e.g.* ECF No. 127 at 3. Federal Rule of Civil Procedure 56(c) provides "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" *or* "showing … the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Mr. Kovalev did not do so.

[2] ECF No. 126-2, ¶ 20.

[3] *Id.* ¶ 21.

[4] *Id.* ¶ 22.

[5] *Id.* ¶ 23.

[6] *Id.* ¶ 24.

[7] *Id.* ¶ 25.

[8] *Id.* ¶ 26.

[9] *Id.*

[10] *Id.* ¶ 27.

[11] ECF No. 18 ¶ 137.

[12] ECF No. 126-6. The video may be viewed at: https://campbell-trial-lawyers.sharefile.com/public/share/web-s2b3e7439419e44568aec0e24c9d20b9c

[13] We reviewed the video, available at the link noted above, showing the following verbal interchange:

> **Unknown caller from Employee 1 iPhone**: Did he leave?
> **Employee 1:** No, he's still standing here.
> **Mr. Kovalev:** Okay. Are you refusing to service me?
> **Employee 1:** Don't take no pictures of me.
> **Mr. Kovalev:** You bet.
>
> **Employee 1**: Don't take no pictures of me.
> **Mr. Kovalev**: Are you refusing?
> **Employee 1:** Who you taking? No I'm not, I'm accusing you of (inaudible).

12

**Mr. Kovalev**: I give you driver license. I give you my insurance identification.
**Employee 2**: Sir you have to go. Sir you have to go.
**Mr. Kovalev**: Okay really?
**Employee 2**: Don't put that camera in my face.
**Employee 1:** Don't put no camera in nobody face because we…
**Mr. Kovalev:** Okay
**Mr. Kovalev:** Why?
**Mr. Kovalev:** Can you explain? You kept my –
**Employee 2:** You have to go, you have to go.
**Mr. Kovalev:** You kept my driver's license.
**Employee 2**: Sir you have to go.
**Mr. Kovalev**: Why?
**Employee 2:** You have to go.
**Mr. Kovalev**: Why?
**Employee 2:** You have to go. You have to go. Don't put the … don't be tryna take no pictures of nobody because …
**Mr. Kovalev**: Yes I will. Because I'll file lawsuit.
**Employee 2:** No, no you're not. Bye sir.
**Mr. Kovalev:** You're public place.
**Employee 2**: Go ahead sir, go ahead.
**Mr. Kovalev:** Okay. Go ahead?
**Employee 2:** Go ahead sir. You have to go.
**Mr. Kovalev:** You are refusing…
**Employee 2:** You have to go sir, go out the door, go out the door sir.
**Mr. Kovalev**: Okay. Okay. (inaudible) ... refusing public service.
**Employee 2:** Go out the door, go out the door sir, go ahead sir.
**Mr. Kovalev**: I can take any picture I want.
**Employee 2**: Go ahead sir. You cannot take any picture (inaudible unidentified office worker: don't don't)
**Mr. Kovalev:** It's harassment, you're touching my phone. It's assault and battery.
**Employee 2:** Can you please, can you, can you put the camera down.
**Mr. Kovalev:** It's assault and battery.
**Unidentified front desk worker**: *Yelling* Ain't no assault and battery.
**Employee 2:** Go ahead.
**Unidentified front desk worker:** What are you talking about?
*In the distance by unidentified person*: Ain't no assault.

*Door closes*
*Mr. Kovalev stands briefly by elevator bank.*

---

[14] ECF 126-2, ¶¶ 33–34.

[15] Sergei Kovalev is a serial pro se litigant in our Court. Mr. Kovalev first sued Laboratory Corporation of America and Laboratory Corporation of America Holdings on December 28, 2021, asserting the same claims as in this action. *See Kovalev v. Laboratory Corp. of Am., et al.*, No. 21-5862. Mr. Kovalev moved for leave to proceed *in forma pauperis*, Judge Pratter denied his motion,

and Mr. Kovalev voluntarily dismissed his case under Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See Kovalev*, No. 21-5682 at ECF No. 7. Mr. Kovalev then refiled his claims at No. 22-552. In addition to his claims against Laboratory Corporation of America, its entities and employees, Mr. Kovalev filed nineteen other cases in this District since 2007: *Kovalev v. Wal-Mart Stores, Inc., et al.*, No. 07-4873; *Kovalev v. The City of Philadelphia*, No. 07-4875; *Kovalev v. Stepansky*, No. 15-6492; *Kovalev v. The City of Philadelphia*, No. 16-6380; *Kovalev v. Stepansky*, No. 19-5579; *Kovalev v. City of Philadelphia*, No. 19-5790; *Kovalev v. Claiborne*, No. 20-188; *Kovalev v. Callahan Ward 12th St., LLC*, No. 21-2318; *Kovalev v. Lidl US, LLC*, No. 21-3300; *Kovalev v. The Home Depot, Inc.*, No. 21-5010; *Kovalev v. Abode LA, LLC*, No. 21-5234; *Kovalev v. CityLife-PA, PC*, No. 21-5517; *Kovalev v. The Covenant Real Estate Group, LLC*, No. 21-5680; *Kovalev v. Spark Energy, LLC*, No. 21-5693; *Kovalev v. Home Depot USA, Inc.*, No. 22-465; *Kovalev v. Spark Energy, LLC*, No. 22-675, *Kovalev v. Walmart Inc.*, No. 22-1217; and *Kovalev v. CityLife-PA, PC*, No. 22-1281; *Kovalev v. Nazareth Hospital*, No. 22-3551.

[16] ECF No. 18.

[17] ECF No. 68. The Chief Judge reassigned this case from the calendar of the Late Honorable Gene E.K. Pratter to our calendar. ECF No. 146.

[18] ECF No. 76.

[19] ECF No. 18, ¶¶ 114, 122.

[20] *Id.* ¶¶ 112–113, 116, 119, 128, 131, 138.

[21] *Id.* ¶¶ 115, 134.

[22] *Id.* ¶ 133.

[23] *Id.* ¶¶ 140, 214.

[24] ECF No. 127 at 4–5.

[25] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review all facts in the light most favorable to Mr. Kovalev as the non-moving party and draw "all justifiable inferences … in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[26] *Cucinotti v. Ortmann*, 159 A.2d 216, 217-18 (Pa. 1960).

[27] RESTATEMENT (SECOND) OF TORTS, § 21 (1965); *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994), *appeal denied*, 656 A.2d 119 (Pa. 1995); *Grande v. Starbucks Corp.*, No. 18-4036, 2021 WL 4709926, at *2 (E.D. Pa. Oct. 8, 2021) (applying Pennsylvania law).

14

---

[28] *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 921 (3d Cir. 2010) (quoting *Cucinotti*, 159 A.2d at 218).

[29] *Id.* (quoting *Cucinotti*, 159 A.2d at 217).

[30] RESTATEMENT (SECOND) OF TORTS § 21(2).

[31] *Id.* at § 21(1).

[32] *Regan*, 363 F. App'x at 921 (applying Pennsylvania law).

[33] *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 190, n. 6 (Pa. 2012).

[34] RESTATEMENT (SECOND) OF TORTS § 18 (1965).

[35] *Id.* § 19; *Herr v. Booten*, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990).

[36] "*Res ipsa loquitur*" means "the thing speaks for itself." Under Pennsylvania law, it is "a shorthand expression for circumstantial proof of negligence—a rule of evidence." *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1071, n. 16 (Pa. 2006). The rule provides "a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence." *Id.* The doctrine of *res ipsa loquitor* applies only to negligence claims, not claims for intentional torts. *Gilbert v. Korvette, Inc.*, 327 A.2d 94, 99 (Pa. 1974).

[37] 550 U.S. 372 (2007).

[38] *Id.* at 380.

[39] *Id.* at 375.

[40] *Id.* at 378.

[41] *Id.* at 380–81.

[42] *Tindell v. Beard*, 351 F. App'x 591 (3d Cir. 2009).

[43] *Id.* at 595–96.

[44] ECF No. 127 at 4–5.

[45] ECF No. 128.

[46] *Id.*

[47] ECF Nos. 92, 93, 96.

---

[48] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1995); ECF No. 95.

[49] ECF No. 107.

[50] ECF Nos. 140, 141, 142.

[51] ECF Nos. 112, 134.

[52] ECF Nos. 106, 121, 137.

[53] ECF No. 101.

[54] ECF No. 108.

[55] ECF No. 137.

[56] *Id.* ¶ 1.